604 A.2d 270

**Eileen BUTLER, Administratrix of the Estate of Patrick Butler Deceased, Appellant,**

**v.**

**KIWI, S.A., Dyna Tour Corporation, Cycle City, Dyna Group International, Romaha Importers and Distributors, Inc.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1992.

Filed March 4, 1992.

Don P. Foster, Philadelphia, for appellant.

Austin Hogan, Philadelphia, for appellees.

Before CIRILLO, TAMILIA and FORD ELLIOTT, JJ.

CIRILLO, Judge:

Appellant, Eileen Butler, ("Butler") Administratrix of the Estate of Patrick Butler, deceased, appeals from the judgment entered in the Court of Common Pleas of Delaware County. We affirm.

Patrick Butler ("Patrick") was killed when he lost control of his motorcycle and spun into the opposing line of traffic. Patrick's motorcycle collided with a motor vehicle and the front wheel of the vehicle rolled over Patrick's head, resulting in fatal injuries.

Butler brought suit against various defendants. Among those defendants was Kiwi, S.A., the manufacturer of the "K-12" helmet which Patrick was wearing at the time of the accident. At trial Butler's primary theories of liability were product defect and strict liability under the Restatement (Second) of Torts, § 402A. Specifically, Butler argued that the "lock and release" mechanism on Patrick's motorcycle helmet was defective in that it released prematurely and caused the helmet to be removed during the impact. Butler contended that had the mechanism operated properly, the helmet would have remained on Patrick's head and he would have survived the accident. The defendants contended that the fatal injuries occurred when the car and tire rolled over Patrick's helmeted head, that the crushing force squeezed the helmet off his head, and that the helmet was not intended to protect against damage by a crushing mechanism.

Following trial, the jury found that the helmet was defective. The jury determined, however, that the defect in the

motorcycle helmet was not the proximate or legal cause of Patrick's death. Judgment was entered on the jury's verdict. Butler filed a motion for a new trial. That motion was denied and this appeal followed.

Butler raises the following issues for our review:

1. Whether the trial court committed an error of law by failing to instruct the jury adequately on appellant's burden of proof and to define preponderance of the evidence?

2. Whether the trial court abused its discretion when it permitted the appellees' expert accident reconstructionist to testify to opinions of medical causation beyond his expertise?

3. Whether the trial court committed an error of law when it permitted appellees' expert accident reconstructionist to testify to matters beyond the scope of his expert's report?

4. Whether the trial court committed an error of law when it refused to instruct the jury on appellant's decedent's habit and custom of wearing his motorcycle helmet and buckling his motorcycle helmet retention systems?

When reviewing the trial court's denial of a motion for a new trial, we are limited to determining whether there was a clear and palpable abuse of discretion or error of law which controlled the outcome of the case. *Stevenson v. General Motors Corp.*, 513 Pa. 411, 521 A.2d 413 (1987). A new trial will only be awarded where the verdict is so contrary to the evidence as to shock one's sense of justice. *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 439–41, 539 A.2d 871, 875 (1988).

Butler first contends that the jury was not properly instructed on the concept of "preponderance of the evidence." The trial court refused Butler's request to instruct the jury in accordance with the Pennsylvania Suggested Standard Jury Instructions–Civil. Instead, the court paraphrased the standard jury instruction. The suggested jury

instruction explains the plaintiff's burden of proving a claim by a preponderance of the evidence as follows:

> ... The evidence establishes a contention by a fair preponderance of the evidence if you are *persuaded* that it is more probably accurate and true than not.... If you are *persuaded* that these propositions are more probably true than not true, your verdict must be for the plaintiff. Otherwise, your verdict should be for the defendant.

Suggested Jury Instructions, Section 5.50 (emphasis added). The court instructed the jury as follows:

> ... The fair preponderance of the evidence, ladies and gentlemen, on any given issue is when you are *convinced*, after your review of the evidence, that it is more probably so than not so. The question then is it more probably so than not so. If you are *convinced* that it is more probably so, more probably true and accurate than not true and accurate, more probably so than not so, then, you are *convinced* by a fair preponderance of the evidence ... In other words, after you have reviewed all of the evidence ... offered by both sides of this case, and after you have reviewed all of that evidence, are you *convinced* by a preponderance of the evidence as to those matters[.]

(R. 366A–368A) (emphasis added).

 When reviewing a claim that the trial court erred in instructing the jury, the scope of appellate review is whether the court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. *Williams v. Philadelphia Transportation Company*, 415 Pa. 370, 203 A.2d 665 (1964). This court will look at the charge in its entirety against the background of evidence in the case to determine whether error was made and whether it was prejudicial. The court will not consider only portions taken out of context, *Reilly by Reilly v. Southeastern Pennsylvania Transportation Auth.*, 507 Pa. 204, 489 A.2d 1291 (1985); *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 475 A.2d 1314 (1984), nor will it reverse for isolated inaccuracies. *Noble C. Quandel Co. v. Slough Flooring, Inc.*, 384 Pa.Super. 236, 558 A.2d 99 (1989).

Here, Butler challenges the court's substitution of the term "persuaded" with the term "convinced." After reviewing the trial court's charge as a whole, we find that the two words are synonymous in the context in which they are used. Contrary to Butler's argument, the term "convince" as used in the court's instruction did *not* elevate the burden of proof to "clear and convincing" evidence. Butler's argument improperly focuses upon these two terms in a context in which they may be used interchangeably, when, in fact, the central idea of the concept of "preponderance of the evidence" is that the proposition in question is "more probable than not." The court's charge as given more than adequately conveyed this idea to the jury.

Furthermore, the suggested standard jury instructions have not been adopted by our supreme court and therefore are not binding, even where a party specifically requests the court use them. As their title suggests, the instructions are guides only. The trial court need not follow them verbatim and may choose to ignore them entirely. The court is free to formulate and express its charge as it sees fit, provided the charge fairly and accurately apprises the jury of the relevant law and guides the jury in its deliberations. *See Mackowick v. Westinghouse Electric Corp.*, 373 Pa.Super. 434, 441, 541 A.2d 749, 752 (1988) (en banc), *affirmed*, 525 Pa. 52, 575 A.2d 100 (1990).

Butler also claims that the court improperly failed to provide the jury with an explanation of the "balance scale" analogy when it instructed the jury as to the plaintiff's burden of proof. As we stated previously, our review of the instruction as a whole discloses that the jury was adequately and accurately instructed on the plaintiff's burden of proof. The court is not required to utilize the exact language a party has requested. *Cooper v. Burns*, 376 Pa.Super. 276, 545 A.2d 935 (1988). The court was free to choose its own form of expression and was not required to accept the specific language requested by counsel. Butler was not prejudiced by the court's failure to use the precise language, or analogy, requested. *Id.* Viewing the charge

as a whole, we find that the trial court committed no error of law or abuse of discretion. *Williams, supra.*

Next, Butler contends that the trial court erred in failing to instruct the jury on Patrick's "habit and custom" of wearing his helmet and buckling the retention system. During trial, Patrick's mother and brother both testified that Patrick was safety conscience and in the habit of buckling his motorcycle helmet. In addition, another witness testified that she saw Patrick just prior to the accident with his helmet on and that she did not see any straps hanging down from the helmet, indicating, of course, that Patrick had fastened the buckle on the helmet. Although the court refused the specific habit instruction, the court properly instructed the jury on the concept of circumstantial evidence. In addition, the court specifically instructed the jury to consider all of the evidence presented. The court may properly refuse a requested instruction when the substance of that request has already been given in either a general or specific charge. *See Werner v. Quality Service Oil Co.,* 337 Pa.Super. 264, 486 A.2d 1009 (1984); *see also Olson v. Dietz,* 347 Pa.Super. 1, 500 A.2d 125 (1985). Butler claims that because the jury found that the product was defective, but that the defect did not cause the accident, that the jury necessarily concluded that Patrick was remiss in his safety precautions and that this was the cause of his fatal injuries. Although this is a plausible argument, it cannot be said the failure to instruct on habit controlled the outcome of the case or prejudiced Butler. *Williams, supra.* There is no evidence indicating that Patrick's helmet was not buckled. This was not the defense's theory. The defense's contention at trial was *not* that Patrick failed to buckle his helmet, but rather that the compressing forces from the motor vehicle tire and the ground caused the fatal injuries *while the helmet was on* Patrick's head. In fact, the defense's expert specifically testified that the helmet was subjected to crushing forces, the motor vehicle tire on the left side of the helmet and the pavement on the right side. These forces were resisted by Patrick's head, indicat-

ing that "the helmet ... was on [Patrick's] head at that time." The court's refusal to honor requests for points for charge which would tend to confuse the jury will not constitute grounds for a new trial. *See* 10 Standard Pennsylvania Practice § 62:50; *see also Ebner v. Ewiak,* 335 Pa.Super. 372, 484 A.2d 180 (1984) (trial court did not err in refusing jury instruction where the requested points were based on an erroneous assumption that the evidence showed the existence of two contracts instead of one). Consequently, we find no error or prejudice in the court's refusal to charge the jury on habit. *Williams, supra; Werner, supra.*

Finally, Butler argues that the trial court abused its discretion and committed an error of law when it permitted the defense's expert accident reconstructionist to testify beyond his expertise and beyond the scope of his expert report. "[T]he opinion testimony of an expert must be narrowly limited to evidence of which he has personal knowledge, which is uncontradicted on the record or which is proffered on an assumed state of facts reasonably shown by the record." *Kozak v. Struth,* 515 Pa. 554, 558–60, 531 A.2d 420, 422 (1987), *citing Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 385, 278 A.2d 908, 910 (1971); *Battistone v. Benedetti,* 385 Pa. 163, 170, 122 A.2d 536, 539 (1956); *Jackson v. United States Pipe Line Co.,* 325 Pa. 436, 440, 191 A. 165, 166 (1937). Professor Hugh Hurt, the defense's expert, was qualified as an expert in the field of aeronautical engineering. Professor Hurt's particular field of research and experience was in accident analysis, which includes accident and injury causation, primarily in the areas of motorcycles and head protection devices. He has assisted in the development of head protection for the United States Air Force, and has researched this field at the University of Southern California for over forty years, the past fifteen years of which have been focused upon motorcycles and helmets. Professor Hurt testified that he has investigated over 1,500 motorcycle accidents, on the scene, to determine causes of motorcycle accidents and injuries,

and has conducted a study for the U.S. Department of Transportation in which he supervised the development of a special head and neck autopsy procedure in the evaluation of 300 fatal motorcycle accidents. Professor Hurt indicated that he was familiar with the basic structure of the neck and head and of the basic anatomy of the brain.

On cross-examination, Professor Hurt clarified that he was not a medical doctor, and not an expert in brain injuries. He did, however, consider himself an expert on brain injury mechanisms of motorcycle accidents.

Butler argues that during the course of his testimony, via videotaped deposition, Professor Hurt rendered opinions in fields in which he was not an expert, in particular, medicine, brain injury, anatomy, pathology, and neuropathology. We have thoroughly reviewed Professor Hurt's testimony, and we conclude that Butler's contention overstates the content of Professor Hurt's opinion testimony.

As the trial court notes in its opinion, Professor Hurt testified as to his basic understanding of the anatomical regions and structure of the brain and skull and explained that his understanding of this was necessary in order to conduct an accident analysis and to determine the force, dynamics and causes of trauma to the head, as well as the accident performance of a helmet. *Based upon the hospital records and the medical examiner's report,* Professor Hurt testified as to the specific bones which were fractured in Patrick's skull. *See* R. 206A–209A. Professor Hurt's opinion, based upon the location of the skull fractures, was that the injuries were consistent with the crushing forces applied to the helmet. Professor Hurt testified:

... The injuries are completely consistent with crushing. Crushing in the front lobe, 240 regions, just right behind the eyes. Crushing loads have been applied from the left. Crushing loads have been applied from the right to produce those particular skull fractures, and, of course, the injuries of the brain adjacent to those fractures. But they're completely consistent with the damage to the helmet. Tire crushing this side from run over, and the

pavement from this side as the helmet is down on the ground and the tire runs over that part of the helmet. And the crushing of the liner [in the helmet] in between says that the helmet was on the head. The damage, the injuries, the fractures, primarily to the skull, indicate those compression loads. All of those are completely consistent [with] a helmeted head being run over by the right side tires of the automobile involved in the collision.

R. 208A–209A. Professor Hurt essentially "reads" the damage to the skull and the helmet in order to determine whether the head was helmeted at the time of the impact and what types of injuries are consistent with the damage to the helmet. This was certainly within the realm of Professor Hurt's own expertise, although supported by other facts of record or expert reports. *See Foster v. McKeesport Hospital,* 260 Pa.Super. 485, 394 A.2d 1031 (1978) (expert opinion testimony can be founded, in part, on the opinions of other experts); *cf. Kearns v. Clark,* 343 Pa.Super. 30, 493 A.2d 1358 (1985); *Simmons v. Mullen,* 231 Pa.Super. 199, 331 A.2d 892 (1974). Professor Hurt did not purport to reach any medical conclusions with respect to the cause of death; that information was available, as stated above, from medical reports.

Professor Hurt also opined that motorcycle helmets are intended to prevent impact to the head, but they are not designed to withstand crushing loads. This, too, well within Professor Hurt's area of expertise. *Yoho v. Stack,* 373 Pa.Super. 77, 540 A.2d 307 (1988). Contrary to Butler's argument, Professor Hurt did not testify as a medical expert. We conclude, therefore, that Butler's claim that the trial court committed error in allowing Professor Hurt to testify to these matters is meritless. *Cooper v. Metropolitan Life Ins. Co.,* 323 Pa. 295, 186 A. 125 (1936).

Finally, Butler argues that the trial court abused its discretion by allowing Professor Hurt to testify beyond the scope of his expert reports. Pennsylvania Rule of Civil Procedure 4003.5(c) provides:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

Pa.R.C.P. 4003.5(c). Butler points to the following specific points to which Professor Hurt testified:

> 1. that skull fractures were caused by a crushing of the head (R.202A–203A; 206A–209A);
>
> 2. that the helmet was pulled off of Butler's head by "high force" (R.211A); and
>
> 3. that the quick release buckle was not defective in design (R.212A–213A; 217A);

Professor Hurt's expert report, dated December 29, 1989, provides:

> ... The *latch system will release when extremely severe lateral forces are applied, as in this runover.* This is an acceptable result because retention of the helmet for all conceivable loads threatens the cervical spine with deadly forces. *In the Butler accident, all of the deadly head injuries were experienced while the helmet was in place, then ejection of the helmet occurred, after the runover had occurred.* The deadly head injuries suffered by Butler occurred with the helmet in place, and no other motorcycle helmet would have prevented or reduced the deadly head injuries as the car ran over the helmeted head.

We disagree with Butler's claim that the mandates of Rule 4003.5(c) were violated. A comparison of the statements to which Butler refers and the expert report reveals that Professor Hurt's testimony regarding the skull fractures, how the helmet was pulled off Patrick's head, and his opinion that the latch system (the "quick release buckle")

was not defective were all within the fair scope of the expert report submitted on December 29, 1989. We find no unfairness, surprise or prejudice to Butler, *Augustine by Augustine v. Delgado,* 332 Pa.Super. 194, 481 A.2d 319 (1984), nor do we agree with Butler's judgment that Professor Hurt's testimony resulted in a "trial by ambush." *Sindler v. Goldman,* 309 Pa.Super. 7, 454 A.2d 1054 (1982). As the trial court noted, Butler was afforded ample time to prepare for trial as well as to prepare for cross-examination of Professor Hurt. *Kemp v. Qualls,* 326 Pa.Super. 319, 473 A.2d 1369 (1984). Butler received the report nearly one month prior to trial. This was sufficient time for counsel to meet those concerns which we conclude could reasonably be anticipated from the content of Professor Hurt's report.

We conclude that the trial court committed no palpable abuse of discretion or error of law. *Stevenson, supra.* Butler's motion for a new trial, therefore, was properly denied.

Affirmed.