## Crane v. Gastrointestinal Specialist Inc.

*Mark W. Tanner,* for plaintiff.
*John Pumphrey,* for defendant Kuti.
*J. Michael Doyle,* for defendants Gastrointestinal Specialist and Harmatz.

JONES, *J.,* June 7, 2002—

## BACKGROUND

The within matter is a medical malpractice action wherein plaintiff claimed to have suffered various neurological symptoms as an alleged result of defendants' negligence in performing a colonoscopy on February 28, 1997. Specifically, plaintiff alleged that while anesthetized, he was instructed to lie on his left side and that as a result of doing so, suffered ulnar nerve damage, including injury to his left arm, hand and fingers, as well as neck and shoulder.

At the conclusion of a jury trial on November 5, 2001, the jury returned a verdict for plaintiff against defendants Alexander Harmatz M.D. and Barbara Kuti C.R.N.A., in the amount of $300,000. In rendering their verdict, the jury further found that: defendant Harmatz was 50 percent causally negligent; defendant Barbara Kuti C.R.N.A., was 50 percent causally negligent; and defendant Harmatz was the ostensible agent of Gastrointestinal Specialist Inc.

All defendants filed post-trial motions,[1] which were denied by this court on February 20, 2002. The within appeal followed, wherein defendants Harmatz and Gastrointestinal Specialist Inc. assert that: (1) plaintiff failed to prove a prima facie case of medical malpractice; (2) the evidence was insufficient to establish that the doctrine of res ipsa loquitur should apply; (3) this court erred in charging the jury on the doctrine of res ipsa loquitur; (4) plaintiff's expert testimony was insufficient to prove

---

1. Subsequent to trial and verdict in this matter, defendant Barbara Kuti C.R.N.A., entered into a settlement agreement with plaintiff. Accordingly, counsel for defendant Kuti did not file a brief in support of post-trial motions and is not a party to the instant appeal.

a prima facie case of medical negligence, as their opinions on causation were inadmissible pursuant to *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923); (5) plaintiff's experts were not qualified to testify against defendant Harmatz; (6) this court erred in permitting plaintiff's experts, Drs. Tahmoush and Fraifeld, to testify beyond the scope of their reports; (7) this court erred in permitting plaintiff's experts to offer prejudicial testimony based upon speculation and conjecture; (8) this court erred in precluding the expert testimony of defendants' expert, Michael Brooks M.D.; (9) defendants were entitled to a new trial or remittitur, due to the excessiveness of the verdict; and, (10) this court erred in denying defendants' post-trial motions. See attachment "A."

## DISCUSSION

### A. *Standard of Law*

Defendants generally assert that as a result of the errors alleged herein, they were entitled to a new trial and/or judgment n.o.v.

The standard to be applied in assessing whether or not a new trial is warranted is well-established. A new trial shall only be granted, "[w]hen a jury's finding is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." See *Gunn v. Grossman,* 748 A.2d 1235, 1239 (Pa. Super. 2000), *appeal denied,* 564 Pa. 700, 764 A.2d 1070 (2000).

With regard to defendants' request for judgment n.o.v.,

"[T]he evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of the evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations. Finally, a [judgment n.o.v.] must be denied where conflicting evidence has been presented to the jury." *Burton-Lister v. Siegel, Sivitz and Lebed Associates,* 2002 WL 819072, \*1-2 (Pa. Super.). (citations omitted)

Moreover, "[t]he entry of judgment n.o.v. . . . is a drastic remedy. A court cannot lightly ignore the findings of a duly-selected jury." *Id.,* quoting *Neal by Neal v. Lu,* 365 Pa. Super. 464, 478, 530 A.2d 103, 110 (1987). Therefore, "A court may not vacate a jury's finding unless 'the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.' " *TJS Brokerage & Co. Inc. v. Hartford Casualty Insurance Co.,* 2002 WL 826484, \*3 (Pa. Com. Pl.), quoting *Birth Center v. St. Paul Companies Inc.,* 787 A.2d 376, 383 (Pa. Super. 2001).

Pursuant to the discussion hereinbelow, defendants' motions for a new trial and/or judgment n.o.v. were properly denied.

B. *Allegations on Appeal*

I. Prima Facie Case of Medical Negligence

Defendants first contend that plaintiff failed to establish a prima facie case of medical negligence at trial. See attachment "A," ¶2.

In order to establish a prima facie case of medical malpractice, a plaintiff must show that: "(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm. Moreover, the patient must offer an expert witness who will testify to a reasonable degree of medical certainty that the acts of the physician deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." *Rauch v. Mike Mayer M.D.,* 783 A.2d 815, 824 (Pa. Super. 2001), *appeal denied,* 568 Pa. 624, 793 A.2d 909 (2002). See also, *Burton-Lister v. Siegel, Sivitz and Lebed Associates,* 2002 WL 819072 (Pa. Super.).

During trial, defendants Harmatz and Kuti testified that if a patient is positioned properly during a colonoscopy, there should be no risk of nerve damage. See N.T. 10/29/01, pp. 113-14, 125. Moreover, plaintiff presented the opinion of two experts who testified to a reasonable degree of medical certainty, that had plaintiff been positioned properly for the procedure, he would not have suffered nerve damage. See videotaped deposition of Dr. Fraifeld. See also, N.T. 10/30/01.

Defendants claim that plaintiff has not met his burden, because his expert witnesses were unable to say with

certainty exactly what occurred during the colonoscopy, or to otherwise point to any action or inaction by defendants that necessarily led to plaintiff's injury. See attachment "A," ¶2. See also, brief of defendants Gastrointestinal Specialist Inc. and Alexander Harmatz M.D., in support of their motion for post-trial relief, p. 19. Despite the fact that this is not a completely accurate depiction of the testimony presented at trial, plaintiff did not necessarily need an expert to prove his case.

"Expert testimony is not . . . required to establish a breach of duty 'where the matter under investigation is so simple, and the lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of even nonprofessional persons.' . . .

"Nor is expert testimony as to *causation* required 'where there is an *obvious* causal relationship' between the injury complained of and the alleged negligent act. . . . 'An obvious causal relationship exists where the injuries are either an "immediate and direct" or the "natural and probable" result of the alleged negligent act.' " *Matthews v. Clarion Hospital,* 742 A.2d 1111, 1112 (Pa. Super. 1999). (citations omitted)

In the instant matter, plaintiff clearly presented sufficient evidence to show that there was an obvious causal relationship between the colonoscopy procedure performed on February 28, 1997, and the ulnar nerve damage that was realized once plaintiff regained consciousness from the anesthesia immediately thereafter. The injuries complained of by plaintiff could be deemed both "immediate and direct," as well as the "natural and probable" result of defendants' acts or omissions, even without the assistance of an expert's opinion.

For these reasons, the testimony of defendants Harmatz and Kuti, as well as plaintiff's two experts, was sufficient to establish a prima facie case of medical negligence.[2] Beyond that, the jury was free to assess the credibility of each witness and reach a final determination based on the law as provided to them.

The foregoing, viewed in conjunction with the record in toto, clearly demonstrates that plaintiff established a prima facie case of medical negligence.

## II. Prima Facie Case of Res Ipsa Loquitur

Defendants further contend that the evidence was insufficient to allow the case to proceed to the jury under the theory of res ipsa loquitur. See attachment "A," ¶2.

The doctrine of res ipsa loquitur is codified in the Restatement (Second) of Torts at section 328D:

"(1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when: (a) the event is of a kind which ordinarily does not occur in the absence of some negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the

---

2. In *Feldman v. Entine,* 42 D.&C.4th 189, 191-92 (1999), *affirmed,* 758 A.2d 728 (Pa. Super. 2000), plaintiff underwent surgery to have a cancerous growth removed from his thyroid. When he awoke from surgery, plaintiff experienced previously nonexistent hoarseness and weakness of his voice. It was determined that his laryngeal nerve was damaged, resulting in paralysis to the vocal cord. The court found that regardless of the fact that plaintiff's expert could not state with specificity exactly how plaintiff's injury occurred, plaintiff was entitled to proceed under the basic principles of negligence, as well as under the theory of res ipsa loquitur.

defendant's duty to the plaintiff." Restatement (Second) of Torts §328D (1965).

Based upon the foregoing standard, the court in *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981), ruled that res ipsa loquitur may be applied in medical malpractice cases and that:

"[E]xpert testimony should no longer be a per se requirement in proof of negligence in all cases of alleged medical malpractice. Expert medical testimony only becomes necessary when there is no fund of common knowledge from which laymen can reasonably draw the inference or conclusion of negligence. Even when there is no fund of common knowledge, the inference of negligence should be permitted where it can be established from expert medical testimony that such an event would not ordinarily occur absent negligence. . . . There is no longer a need to be reluctant to permit circumstantial proof in medical malpractice cases where the nature of the evidence provides the requisite reliability of the inference sought to be drawn. When common-law knowledge or medical evidence can be established that the event would not ordinarily occur without negligence, there is no basis for refusing to permit a jury to draw such an inference." *Id.* at 472-73, 437 A.2d at 1138.

The court in *Jones* further found that it is not necessary for a plaintiff to eliminate the possibility of any and all other causes of the injury, in order to proceed under the doctrine of res ipsa loquitur. *Id.* at 476-77, 437 A.2d at 1140.

In a more recent medical malpractice case entitled *Toogood v. Owen J. Rogal D.D.S. P.C.,* 764 A.2d 552 (Pa. Super. 2000), the court similarly found that the doc-

trine of res ipsa loquitur was applicable. Plaintiff in *Toogood* received a cortisone injection for muscle pain in his back. Immediately thereafter, plaintiff began experiencing intensified pain and was unable to breathe. He was rushed to the hospital where it was determined that plaintiff's lung had collapsed. The honorable appellate court ultimately concluded that under these circumstances, "the trial court properly permitted appellee to proceed on a theory of res ipsa loquitur." *Id.* at 556. See also, *Sweikert v. Kostin,* 54 D.&C.4th 290 (2001).

In view of the foregoing, as well as the facts proffered by plaintiff, this court properly found that plaintiff was entitled to proceed under the theory of res ipsa loquitur, in addition to general negligence.

### III. Jury Instruction on Res Ipsa Loquitur

Defendants next assert that this court erred in instructing the jury on the doctrine of res ipsa loquitur. See attachment "A," ¶3.

For the reasons set forth immediately hereinabove, the doctrine of res ipsa loquitur was wholly applicable to the case at bar. With specific regard to defendants' assertion that a new trial is warranted because this court improperly instructed the jury on res ipsa loquitur, the following has been clearly established:

"In order to warrant a new trial with regard to an objection to a court's instructions to the jury, the complaining party must establish (a) that a charge was erroneous, and (b) that this erroneous charge controlled the outcome of the case. . . . '[I]t is important to remember that res ipsa loquitur is merely a rule of circumstantial evidence.' . . . Thus, in light of the fact that all juries are entitled to

consider both direct and circumstantial evidence [no argument can be made that] such a charge could 'control the outcome of the case.' " *Torres v. Episcopal Hospital,* 47 D.&C.4th 104, 110 (2000), *affirmed,* 777 A.2d 517 (Pa. Super. 2001). (citations omitted)

With further regard to the propriety of a res ipsa loquitur instruction,

"In its purest form, '[w]here there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of the defendant is the most plausible explanation for the injury, the doctrine [of res ipsa loquitur] applies.' " *D'Ardenne v. Strawbridge & Clothier Inc.,* 712 A.2d 318, 321 (Pa. Super. 1998), *appeal denied,* 557 Pa. 643, 734 A.2d 394 (1998).

Moreover,

"Pennsylvania courts have thus concluded that where 'the evidence in [the] case falls within the grey zone,' . . . a factual realm in which a plaintiff presents 'as specific a case of negligence as possible, yet [is] unable to demonstrate the *exact* cause of the accident[,]' . . . plaintiff is entitled to a res ipsa loquitur charge." *Id.* at 324-25. (citations omitted)

A review of the record herein clearly demonstrates that a res ipsa loquitur charge was warranted in this matter. Accordingly, this issue as raised by defendants on appeal, is wholly without merit.

IV. Admissibility of Plaintiff's Experts' Opinions

Defendants next contend that they "are entitled to a judgment n.o.v. because plaintiff's expert testimony was insufficient to prove a prima facie case of medical negligence as their opinions on causation were inadmissible

pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and all authority in this Commonwealth." See attachment "A," ¶4.

Preliminarily, this court heard arguments on defendants' motion in limine regarding this issue, prior to trial. Pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, this court relies upon the same in support of its decision, as the reasons therefore appear of record. See N.T. 10/29/01, pp. 33-52.

Aside from this court's rulings regarding plaintiff's two experts (Dr. Tahmoush and Dr. Fraifeld), this court again points out that under the circumstances presented, plaintiff could have conceivably sustained his case without the use of an expert. See discussion, sections I and II hereinabove. See also, *Matthews v. Clarion Hospital*, 742 A.2d 1111, 1112 (Pa. Super. 1999). (Expert testimony as to causation is not required where the injury complained of is either an "immediate and direct" or the "natural and probable" result of the alleged negligent act.)

For these reasons, defendants' claims regarding plaintiff's experts are without merit.

### V. Qualification of Plaintiff's Expert Witnesses

Next, defendants contend that "Plaintiff did not prove a prima facie case of medical negligence, as his expert witnesses were not qualified to testify against Dr. Harmatz." See attachment "A," ¶5.

For the reasons set forth hereinabove, this issue as raised by defendants is wholly without merit.[3]

---

3. See also, N.T. 10/29/01, pp. 33-52, which this court further relies upon in support of its rulings regarding the qualification of experts Tahmoush and Fraifeld.

## VI. Expert Testimony "Outside the Scope" of the Report

### a. *Dr. Tahmoush*

Defendants next assert that they are entitled to a new trial because this court erroneously allowed plaintiff's expert, Dr. Tahmoush, to "offer prejudicial testimony outside the scope of his expert report." See attachment "A," ¶6.

Pursuant to Rule 4003.5(c) of the Pennsylvania Rules of Civil Procedure,

"To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters which he has not been interrogated in the discovery proceedings." Pa.R.C.P. 4003.5.

The standard by which "fair scope" issues are to be assessed "is whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial." *Hickman v. Fruehauf Corp.,* 386 Pa. Super. 455, 459, 563 A.2d 155, 157 (1989), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991).

Further,

"[I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' The question to be answered is whether, un-

der the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response. . . . *'Fair scope' contemplates a reasonable explanation and even an enlargement of the expert's written words." Id.,* quoting *Wilkes-Barre Iron & Wire Works Inc. v. Pargas of Wilkes-Barre,* 348 Pa. Super. 285, 290-91, 502 A.2d 210, 212-13 (1985). (emphasis added)

An example of how this reasoning is to be applied, may be seen in *Butler v. Kiwi S.A.,* 412 Pa. Super. 591, 604 A.2d 270 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992). In *Butler,* the court was faced with a situation wherein a motorcycle accident analyst prepared a report approximately one month prior to trial, regarding the manner in which helmets operate to protect a motorcyclist's head from trauma. At trial, the same expert testified as to the manner in which the helmet in question was pulled off of the victim's head, as well as to the cause of the skull fractures sustained by the victim. The court determined that this testimony was within the fair scope of the report and did not result in unfairness, surprise or prejudice to the other party. *Id.* at 603, 604 A.2d at 275-76.

In yet another matter entitled *Trent v. Trotman,* 352 Pa. Super. 490, 508 A.2d 580 (1986), appellee's expert at trial began to discuss the issue of causation, which was not specifically mentioned in his answers to interrogatories. Appellant contended that the trial court erred in permitting appellee's expert to testify beyond the scope of his answers to interrogatories. The court held that:

"While the word 'causation' was not specifically mentioned in the interrogatories completed by the plaintiff regarding Dr. Rosenberg's expected testimony, it is certainly clear that his testimony concerning causation, challenged by the appellant, was within the 'fair scope' of the answers to interrogatories provided by the plaintiff prior to trial." *Id.* at 502, 508 A.2d at 586-87.

Defendants' main point of contention herein is that Dr. Tahmoush's testimony exceeded the scope of his report, with regard to the issue of "positioning" during the surgical procedure on February 28, 1997. Since the filing of his complaint, allegations of improper positioning of the arm have been the crux of plaintiff's theory regarding how he believed his injuries were sustained. Defendants cannot claim surprise and were in no way prejudiced by Dr. Tahmoush's testimony.[4]

### b. *Dr. Fraifeld*

Defendants further assert that they are entitled to a new trial because this court erroneously allowed plaintiff's expert, Dr. Fraifeld, to "offer prejudicial testimony outside the scope of his expert report." See attachment "A," ¶7.

Dr. Fraifeld did not testify live at trial. Instead, plaintiff offered a videotaped deposition of the doctor. Prior to showing said video to the jury, this court ruled on various objections to Dr. Fraifeld's testimony, including that regarding "scope." This court's rulings on the same may be found at pages 4-34 of the notes of testimony of Oc-

---

4. This court's rulings on defendants' objections to the scope of Dr. Tahmoush's testimony may be found in the notes of testimony of October 30, 2001, at pp. 86-95.

tober 31, 2001. For the reasons set forth therein, this issue as raised by defendants must be deemed without merit.

## VII. "Speculative" Nature of Testimony Offered by Plaintiff's Experts

Defendants' next contention on appeal is that "plaintiff's experts were improperly permitted to offer prejudicial testimony based on speculation and conjecture." See attachment "A," ¶8.

This court's rulings regarding the purported nature of experts Fraifeld and Tahmoush's testimony may be found at pages 33-52 of the notes of testimony of October 29, 2001, and pages 4-34 of the notes of testimony of October 31, 2001. For the reasons set forth therein, this issue as raised by defendants must be deemed without merit.

## VIII. Proposed Defense Expert Michael Brooks

Defendants next assert that this court "improperly precluded the expert testimony of Michael Brooks M.D." See attachment "A," ¶9.

Prior to trial, this court heard arguments on plaintiff's motion in limine to preclude the expert testimony of Dr. Michael Brooks. The same, including this court's rulings, may be found at pages 19-32 of the notes of testimony of October 29, 2001. For the reasons set forth therein, this issue as raised by defendants must be deemed without merit.

## IX. Excessiveness of Verdict

Defendants next assert that a new trial and/or remittitur is required because of the excessiveness of the verdict. See attachment "A," ¶¶10 and 11.

Preliminarily, "[t]he mere height of a verdict, . . . is in itself no evidence of excessiveness because height is always a matter of relativity." *Layman v. Doernte,* 405 Pa. 355, 363, 175 A.2d 530, 534 (1961).

Moreover,

"The decision to grant, or not to grant, [remittitur or] a new trial based on the excessiveness of a jury verdict is within the sound discretion of the trial court, and its decision will be upheld on appeal absent a gross abuse of that discretion. . . . In this area of the law, a gross abuse of discretion means that the verdict must be so grossly excessive that it shocks the court's sense of justice. . . . *We are not free to substitute our judgment for that of the trial judge or jury." Tesauro v. Perrige,* 437 Pa. Super. 620, 623, 650 A.2d 1079, 1081 (1994), *appeal denied,* 541 Pa. 627, 661 A.2d 874 (1995). (emphasis added) (citations omitted)

Further,

"In determining whether a verdict is excessive, a court may consider the following factors: (1) the severity of the injury; (2) whether the injury is manifested by objective physical evidence or whether it is only revealed by the subjective testimony; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his or her employment; (5) the size of out-of-pocket expenses; (6) [t]he amount of compensation demanded in the original complaint. However, as each case is unique, the court should apply only those factors which are relevant to that particular case before determining if that verdict is excessive." *Petrasovits v. Kleiner,* 719 A.2d 799, 806 (Pa. Super. 1998).

During trial, this court had an opportunity to observe plaintiff first-hand and to listen to his testimony regard-

ing the effect this injury has had on his life. Additionally, in first assessing this issue at the post-trial motion stage, this court carefully considered the record in its entirety with regard to the extent of plaintiff's injury and the effect said injury has had, and will continue to have, upon his life. At the conclusion of its assessment, this court determined that neither a new trial, nor order of remittitur was warranted. In view of the facts and circumstances surrounding the injury to plaintiff, the verdict was not "excessive," "exorbitant" or "shocking," as defendants so assert.

Accordingly, this issue as raised by defendants is without merit and the ruling of this court should not be disturbed on appeal.

## X. Denial of Post-Trial Motions

The standard for assessing the propriety of a trial court's decision to deny post-trial motions is well-settled: abuse of discretion. In determining whether or not a trial court has abused its discretion in reaching a decision,

"The test is not whether [the appellate court] would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." *Bergman v. United Services Automobile Association*, 742 A.2d 1101, 1104 (Pa. Super. 1999).

Moreover, "the definition of a valid use of discretionary power means that the decision under scrutiny had merit." *Id.*

Defendants' burden of establishing that this court abused its discretion is a heavy one.

"[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Bergman*, 742 A.2d at 1104, quoting *Paden v. Baker Concrete Construction Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995).

Post-trial motions filed on behalf of defendants were properly denied, as the record clearly demonstrates that a new trial or judgment n.o.v. was not warranted. As such, and in reliance upon the same, this court maintains that its decision was proper and that no abuse of discretion occurred.

Accordingly, defendants' final issue on appeal is without merit.

## CONCLUSION

For the reasons set forth herein, judgment should be affirmed.

---

## ATTACHMENT "A"

---

## Pa.R.A.P. 1925(b) STATEMENT OF MATTERS COMPLAINED OF ON APPEAL BY APPELLANTS-DEFENDANTS, GASTROINTESTINAL SPECIALIST INC. AND ALEXANDER HARMATZ M.D.

Pursuant to Pa.R.A.P. 1925(b) and the trial court's order dated April 8, 2002, Gastrointestinal Specialist Inc.

and Alexander Harmatz M.D., defendants, by and through their counsel, Post & Schell P.C., hereby list their concise statement of matters complained of on appeal as follows:

(1) The trial court erred in denying the request for post-trial relief (in the nature of a judgment n.o.v., a new trial or a remittitur) previously filed by defendants as a result of the errors which took place during the proceedings in this matter. Each error addressed herein caused defendants to suffer irreparable prejudice which controlled the outcome of the case and now mandates the granting of appellate relief in their favor.

(2) Defendants are entitled to a judgment n.o.v. because plaintiff failed to prove a prima facie case of medical negligence since his expert witnesses could not pinpoint any particular error and, further, since the evidence was insufficient to allow the case to proceed to the jury under a theory of res ipsa loquitur.

(3) Defendants are entitled to a judgment n.o.v. or a new trial as the trial court erred in charging the jury on the doctrine of res ipsa loquitur.

(4) Defendants are entitled to a judgment n.o.v. because plaintiff's expert testimony was insufficient to prove a prima facie case of medical negligence as their opinions on causation were inadmissible pursuant to *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), and all authority in this Commonwealth.

(5) Defendants are entitled to a judgment n.o.v. or a new trial because plaintiff did not prove a prima facie case of medical negligence as his expert witnesses were not qualified to testify against Dr. Harmatz.

(6) Defendants are entitled to a new trial because the trial court improperly permitted plaintiff's expert, Dr.

Tahmoush, to offer prejudicial testimony outside the scope of his expert report.

(7) Defendants are entitled to a new trial because the trial court improperly permitted plaintiff's expert, Dr. Fraifeld, to offer prejudicial testimony outside the scope of his expert report.

(8) Defendants are entitled to a judgment n.o.v. or a new trial because plaintiff's experts were improperly permitted to offer prejudicial testimony based on speculation and conjecture.

(9) Defendants are entitled to a new trial because the trial court improperly precluded the expert testimony of Michael Brooks M.D.

(10) Defendants are entitled to a new trial based on the excessiveness of the verdict.

(11) Defendants are entitled to a remittitur based on the excessiveness of the verdict.

(12) The trial court erred in entering its order, dated February 20, 2002, and entered February 26, 2002, which denied the motion for post-trial relief of defendants.

(13) With reference to all of the above allegations of error, each averment has been properly preserved for appeal in accordance with Pa.R.A.P. 341.

(14) The post-trial order denying defendant's motion for post-trial relief became appealable as of right when judgment was entered on the jury's verdict by order dated March 14, 2002, and entered March 15, 2002.

(15) Hence, defendant's appeal is authorized by virtue of Pa.R.A.P. 341, as well as 42 P.S. §742 and 42 P.S. §5105.