J-S56005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| REBECCA LYNN LENTZ, | |
| Appellant | No. 901 MDA 2015 |

Appeal from the Judgment of Sentence December 11, 2014
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000463-2014

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:        **FILED OCTOBER 21, 2016**

Appellant, Rebecca Lynn Lentz, appeals from the judgment of sentence of 72 hours' to 6 months' incarceration, following her conviction at a bench trial for multiple counts of driving under the influence of alcohol (DUI). Appellant challenges the sufficiency and weight of the evidence supporting her conviction.  After careful review, we reverse.

The trial court summarized the facts adduced at trial as follow:

> At [the] non-jury trial held on October 23, 2014, the parties stipulated that [Appellant] was under the influence of alcohol at the time of the stop and that her blood alcohol concentration was 0.189%.  On March 8, 2015, at approximately 1:20 a.m., Pennsylvania State Trooper William Patrick McDermott was travelling north on State Route 220 in Bradford County and came upon a Buick LeSabre.  The vehicle immediately turned its signal on and pulled over to the side of

_____

[*] Former Justice specially assigned to the Superior Court.

the road. The trooper passed by the vehicle[,] which then pulled back out and began driving behind the trooper['s] vehicle. The trooper noticed the vehicle weaving back and forth, but [he] could not tell if it was going over the center or fog lines. In order to determine how the vehicle was driving, the trooper pulled over and off [the] road, assuming the Buick would pass him [so that] he could then follow it. However, the vehicle put its turn signal on and pulled [over] approximately one car length [behind the trooper's vehicle]. While watching in his rear view mirror, the trooper saw the driver exit the vehicle, run around the car[,] and enter into the passenger['s] side. He also saw someone moving over to the driver['s] side in the vehicle. The trooper then activated his lights and approached the driver's side. [Appellant] was seated in the driver['s] seat. The headlights were on, the keys were in the ignition[,] and the engine was running. The trooper inquired why [the] drivers had switched. [Appellant] told him that her friend was too intoxicated to drive and now [Appellant] was going to [drive] because she felt more sober. [The t]rooper [smelled] a strong odor of alcohol from inside the vehicle, [Appellant]'s eyes were glossy, glassy[,] and slightly red. [The t]rooper asked [Appellant] if she had been drinking and [she] stated yes. [Appellant] was asked to step outside the vehicle. [Appellant] became very argumentative. … [Appellant] was eventually taken for blood tests. [Appellant] was charged with [DUI]. [Appellant] testified that she did not drive the vehicle and that she was planning on calling a friend to come and give them a ride. [According to the trooper's testimony, however, Appellant] did not tell the … trooper that when he asked what she was doing[;] rather, she replied that she was more sober and was going to drive. The [trial c]ourt did not find [Appellant] credible.

A non-jury trial took place on October 23, 2014[,] after which [Appellant] was found guilty of three counts of [DUI], 75 Pa.C.S. § 3802(a)(1), general impairment, § 3802(c)[,] highest rate, and § 3802(b), high rate, [all] ungraded misdemeanors. [Appellant] was sentenced on December 14, 2014[,] to a minimum of 72 hours and a maximum of six months on [§ 3802(c)]. The other two counts merged into [that offense] and[,] therefore, no sentence was imposed [for those offenses].

Trial Court Opinion (TCO), 12/23/15, at 1-2.

Appellant filed timely post-sentence motions on December 18, 2014, which were denied by operation of law on May 20, 2015. Appellant filed a timely notice of appeal on May 27, 2015, and a timely, court-ordered Pa.R.A.P. 1925(b) statement on June 3, 2015. The trial court issued its Rule 1925(a) opinion on December 23, 2015.

Appellant now presents the following questions for our review:

I. Was the evidence sufficient to convict [Appellant] of [DUI] beyond a reasonable doubt where [Appellant] was in the driver's seat of a running vehicle for mere seconds after moving to that seat from the passenger's side of the vehicle?

II. Was the verdict of guilty of [DUI] against the weight of the evidence where testimony showed [Appellant] was in the driver's seat for no more than 10 seconds, and where [Appellant] would have to adjust the seat and mirrors to drive?

Appellant's Brief, at 7.

Appellant's first claim challenges the sufficiency of the evidence. Our standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant's sufficiency claim concerns a portion of the DUI statute that is common to each of her separate DUI convictions, as emphasized below:

**(a) General impairment.--**

(1) *An individual may not drive, operate or be in actual physical control of the movement of a vehicle* after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) *An individual may not drive, operate or be in actual physical control of the movement of a vehicle* after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(b) High rate of alcohol.-**-*An individual may not drive, operate or be in actual physical control of the movement of a vehicle* after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(c) Highest rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle* after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802 (emphasis added).

Appellant argues that because the trooper directly observed that she had switched seats with the driver of the Buick LeSabre just prior to their interaction, she had not (yet) driven, operated, or been in actual control of that vehicle. Appellant suggests that, even construing the evidence in a light most favorable to the Commonwealth, it was at best demonstrated that Appellant had committed an *attempted* DUI.

The trial court, acting as finder-of-fact in this case, concluded that because Appellant "was in the driver['s] seat, the vehicle was running, the lights were on, and [Appellant] told the police officer [that] she was planning on driving[,]" the evidence was sufficient to demonstrate that Appellant was operating the vehicle within the meaning of the DUI statute. TCO, at 3. In reaching this conclusion, the trial court relied on our decision in *Commonwealth v. Brotherson*, 888 A.2d 901 (Pa. Super. 2005), where we stated, "[t]he term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." *Id.* at 904 (quoting *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003)).

In **Brotherson**,

> [a]t approximately 10:45 p.m. on March 24, 2001, Officer Jeffrey Trobes of the Philadelphia Police Department was on routine patrol of a closed playground at 3001 West Lehigh Avenue when he saw a car parked on the playground's basketball court. According to the officer, access to the park was located at the park's 29th Street entry gate, which was routinely closed at dusk and was, in fact, closed when the officer

observed the car in question. The only other way the car could have entered the park is if it had driven across a grass lot and onto the basketball court, but there was no testimony as to tire tracks through the grass or mud on the car.

The officer approached the car to discover that the engine was running and a driver, [Brotherson], was asleep in the driver's seat. From his vantage point, the officer saw an "open" 40 ounce bottle of malt liquor in the car. Officer Trobes awoke [Brotherson], whom the officer noticed to have glassy eyes and a slow response to questions. Based on his observations, the officer administered sobriety tests, which [Brotherson] failed. Officer Trobes therefore arrested [Brotherson] and transported him for BAC testing, which showed [Brotherson] to have a .118% BAC over three hours after the arrest. Accordingly, [Brotherson] was charged with DUI.

*Id.* at 903 (footnotes omitted).

Brotherson appealed his subsequent DUI conviction, essentially arguing that the evidence was not sufficient to demonstrate that he was intoxicated prior to driving his vehicle onto the playground. Thus, the issue directly addressed in ***Brotherson*** is not on-point. Nevertheless, the ***Brotherson*** Court noted:

In a majority of cases, the suspect location of the vehicle, which supports an inference that it was driven, is a key factor in a finding of actual control. ***See Commonwealth v. Bobotas***, 403 Pa.Super. 136, 588 A.2d 518, 521 (1991) (finding actual physical control when the defendant was found parked in an alley, where he had pulled over on the way home, with the motor running); ***Commonwealth v. Crum***, 362 Pa. Super. 110, 523 A.2d 799, 800 (1987) (finding actual physical control when [the] defendant was found sleeping in his parked car, along the side of the road, with the headlights on and the motor running). Conversely, where the location of a car supported the inference that it was not driven, this Court rejected the inference of actual physical control. Specifically, in [***Commonwealth v.***] ***Byers***, [650 A.2d 468 (Pa. Super. 1994)], we concluded that there was no actual physical control even though the motorist was found asleep behind the wheel of his running car, because the car had

not been moved from the parking lot of the bar where the motorist became intoxicated. ***Id.***

**Brotherson**, 888 A.2d at 905.

Base on this analysis of case law, the **Brotherson** Court reasoned:

The case at bar involves evidence above and beyond a showing that an intoxicated [a]ppellant merely started the engine of a parked car. The highly inappropriate location of the car-on the basketball court of a gated children's playground-created a strong inference that it was an already intoxicated [a]ppellant who had driven the car to that spot. Further distinguishing this case from **Byers** is the reasonable inference that [the a]ppellant's BAC of .118% more than three hours after his arrest could not have derived exclusively from the limited amount of beer available within his car.

***Id.***

Clearly, the **Brotherson** case relied on certain factors, similar to those involved in this case (such as the location of the vehicle, the engine running, and the suspect being seated in the driver's seat), to conclude that Brotherson had been driving, operating or in actual physical control of the movement of his vehicle ***before*** he was discovered by police, and to dispel the notion that he had only become intoxicated after parking his vehicle on the basketball court. The instant case is markedly different, as Trooper McDermott, through direct observation, definitively knew that Appellant had not been driving the vehicle beforehand. So, while the factors cited by the trial court tend, in a general sense, to demonstrate that a suspect had been driving or operating a vehicle while intoxicated before being discovered in a motionless vehicle, no such inference can be drawn under the specific facts of this case.

Thus, the trial court based Appellant's conviction not on an inference drawn from the facts that Appellant had been driving or operating the vehicle while intoxicated before being discovered by police, but on her *intent* to drive while intoxicated in the immediate future. TCO, at 4 ("[Appellant] admitted that she intended to drive. [Appellant] was in the driver's seat, [the] engine was running[,] and [the] lights were on. [Appellant] intended to drive."). The trial court cites no controlling authority for this proposition.[1] Accordingly, we conclude that the evidence was insufficient to convict Appellant of any of the three charged DUI offenses.[2]

_____

[1] The court relies only on a standard criminal jury instruction for this proposition, an instruction which suggests that the public safety justification for the DUI law extends to those individuals who have a present intention of driving while intoxicated. TCO, at 4. However, whether the justification for the DUI law extends to such circumstances is a different question from whether the statutory language actually prohibits that conduct. The legislature is certainly free to design statutory language capable of extending the DUI law to encompass an intent-to-drive-intoxicated crime. In any event, the Standard Jury Instructions are not controlling legal authority. *See Commonwealth v. Simpson*, 66 A.3d 253, 274 n.24 (Pa. 2013) ("The Suggested Standard Jury Instructions themselves are not binding …."); *Butler v. Kiwi, S.A.*, 604 A.2d 270, 273 (Pa. Super. 1992) ("[T]he suggested standard jury instructions have not been adopted by our supreme court and therefore are not binding, even where a party specifically requests the court use them. As their title suggests, the instructions are guides only. The trial court need not follow them verbatim and may choose to ignore them entirely.").

2 We recognize that in *Brotherson*, as in previous cases, this Court has stated that "[t]he term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, *but not evidence that the vehicle was in motion*." *Commonwealth v. Johnson*, 833 A.2d 260, 263 (Pa. Super. 2003) *(Footnote Continued Next Page)*

Finally, it is possible that Appellant could have been convicted of attempted DUI. However, Appellant argues that she was not charged with that offense. That assertion is supported by the record. The criminal complaint filed by Trooper McDermott makes no mention of the inchoate crime of attempt, despite the fact that the form utilized contains specific boxes, for each offense, which an officer can check in order to indicate the commission of an inchoate offense.[3] Furthermore, the criminal information filed by the Commonwealth makes no mention of attempt or the relevant statute, 18 Pa.C.S. § 901.

We recognize that our Supreme Court has determined that because attempt crimes are inherently lesser-included offenses of the crime

*(Footnote Continued)* ————————————

(emphasis added) (quoting **_Commonwealth v. Wilson_**, 660 A.2d 105, 107 (Pa. Super. 1995)). However, we do not accept the trial court's implicit legal conclusion that this language was crafted in order to construe the DUI statute as prohibiting the mere *intent* to drive while intoxicated. Instead, that language simply articulates that the Commonwealth is not required to present evidence in the form of a direct observation of a DUI defendant's driving in order to obtain a conviction for DUI. Left unstated is the corollary, which is that some circumstantial evidence is required to support the *inference* that the vehicle in question had been in motion while under the intoxicated defendant's control at some prior time. The cases which relied on this language uniformly involved circumstances where the defendant was first observed in a motionless vehicle, or not otherwise directly observed driving. To our knowledge, no cases have involved the critical fact in this case, which is that the evidence was uncontested that Appellant had not been driving or otherwise operating the vehicle before her encounter with Trooper McDermott.

[3] The criminal complaint form contains check boxes for "Attempt," "Solicitation," and "Conspiracy," including references to the applicable statutes, 18 Pa.C.S. §§ 901(a), 902(b), and 903, respectively.

attempted, a failure to specifically charge for an attempt crime does not preclude a conviction on that basis when the greater-included crime has been properly charged. **See Commonwealth v. Sims**, 919 A.2d 931, 943 (Pa. 2007) (holding "the fact that [the] appellee had been charged only with escape did not preclude the trial court from convicting him of attempted escape"). However, in **Sims**, the defendant was actually convicted of attempted escape ("[t]he court ultimately found [Sims] guilty of attempted escape"), and did so only after considering the prosecutor's closing argument that the defendant "should be convicted of 'at least attempted escape.'" **Id.** at 933.

Here, however, the record utterly fails to demonstrate that Appellant was actually convicted of an attempted-DUI offense. Appellant was not charged with an attempt offense, as noted above. The prosecutor did not argue at trial that, despite not being charged with attempted-DUI, Appellant could be convicted of an attempted DUI offense in accordance **Sims**. **See** N.T., 10/23/14, at 51-53. Furthermore, when issuing its verdict, the trial court did not state that it was convicting Appellant of attempted DUI. **Id.** at 53-55. To the contrary, the trial court found Appellant "guilty of all counts contained in the information[.]" **Id**. at 54. Moreover, in its opinion, the trial court did not state, nor even suggest, that it convicted Appellant of attempted DUI. **See** TCO, at 2 ("[Appellant] was found guilty of three counts of [DUI]…."). Finally, the Commonwealth makes no argument on appeal, as it declined to file a brief in this case. Under these circumstances,

- 10 -

the rule established in **Sims** does not apply. Regardless of whether Appellant could have been convicted of attempted DUI in the trial court, we cannot convict her of that offense in the first instance, *sua sponte,* on appeal.

Because of our disposition above, Appellant's second claim, involving the weight of the evidence supporting his conviction is rendered moot.

Judgement of sentence **reversed**. Jurisdiction **relinquished**.

Judge Panella joins this memorandum.

President Judge Emeritus Stevens files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2016