J-A23019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE ESTATE OF RICHARD HAYES AND MARY HAYES BY AND THROUGH THE ADMINISTRATRIX OF HIS ESTATE, MARY HAYES | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : : | No. 3072 EDA 2019 |
| COATESVILLE HOSPITAL CORPORATION, D/B/A BRANDYWINE HOSPITAL AND THOMAS JEFFERSON UNIVERSITY HOSPITAL AND THOMAS JEFFERSON UNIVERSITY HOSPITAL, INC. | : : : : : : | |

Appeal from the Judgment Entered October 16, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  4198 May Term, 2016

BEFORE:   KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  May 10, 2021**

The Estate of Richard Hayes, and Mary Hayes by and through the

Administratrix of his estate, Mary Hayes (collectively Appellant), appeals from

the October 16, 2019 judgment entered in Appellant's favor in the amount of

$70,000.00, against Appellee Coatesville Hospital Corporation, doing business

as Brandywine Hospital and Thomas Jefferson University Hospital, and

Thomas Jefferson University Hospital, Inc.  Appellant requests that we reverse

the trial court's order denying its post-trial motion for a new trial as to

_____

[*] Retired Senior Judge assigned to the Superior Court.

damages only, and in support, Appellant claims the trial court erred in instructing the jury: (1) concerning the testimony it may consider during deliberations; and (2) regarding the burden of proof necessary to determine causation in the underlying medical malpractice action. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> In this medical malpractice action, [plaintiff, Mary Hayes] claims that her late husband, Richard Hayes ([the decedent]), suffered a thermal burn in the course of undergoing an MRI on account of the professional negligence of [Appellee] Thomas Jefferson University Hospital ("TJUH"). As a result of this burn, [Appellant] claims that [the decedent] could not receive chemotherapy treatment for his Stage IV metastatic pancreatic cancer and, thus, his lifespan was shortened by several months. At trial, the evidence showed that in early January 2014, [the decedent], age 63, was diagnosed with Stage IV metastatic pancreatic cancer, following spinal surgery at [Appellee] Brandywine Hospital. At the time of diagnosis, the cancer had already spread to his spine and lungs. While at Brandywine Hospital, [the decedent] took a serious fall on January 12, 2014 which disturbed the surgical site. [The decedent] was subsequently transferred to TJUH in a paraplegic condition in order to undergo a second spinal surgery. While at TJUH, [the decedent] underwent an MRI on January 13, 2014 and sustained the at-issue thermal burn because a transducer had been left on his arm. The day after the MRI, [the decedent] underwent the reconstructive spinal surgery at TJUH. [The decedent] passed away six months later, on June 14, 2014.
>
> Following the close of all evidence, this [c]ourt instructed the jury regarding [Appellant's] claims. During jury deliberations, the jury submitted two questions: the first was "Can we see the W-2 info"; and the second was "Explanation of the Wrongful Act and the Survival Act."[fn2] This [c]ourt reconvened the jury and recharged the jury on the damages that may be awarded under both the Wrongful Death Act and the Survival Act and further instructed the jury that the requested W-2 was not admitted into evidence and, as such, the jury should consider the testimony of the witness at the time it was referenced. On February 19, 2019, the jury

returned a verdict in favor of [Appellant] and against TJUH and awarded [Appellant] $70,000 in damages under the Pennsylvania Survival Act [and $0 under the Wrongful Death Act[fn3]] On appeal, [Appellant] asserts claims of error with regard to this Court's jury charge as it pertained to the at-issue injury in the instant matter.

[fn2] *See* Juror Question form from 2/19/2019 at 2:55 p.m.

[fn3] On March 1, 2019, [Appellant] filed a timely Motion for Post-trial Relief and, on September 16, 2019, this Court denied the motion. On October 16, 2019 [Appellant] entered judgment and, on October 17, 2019, [Appellant] filed a Notice of Appeal to the Superior Court. On October 18, 2019, [Appellant] was served an Order to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Trial Ct. Op., 12/19/19, at 1-2.

On appeal, Appellant raises the following issues:

[1.] Did the trial judge err in repeatedly charging the jury [that] the issue [in this case] was whether Dr. Soojian's testimony supported [Appellant's] claims, [emphasizing] that the Hospital's negligent infliction of a severe burn on [Appellant's] decedent had disqualified [decedent] from receiving life-extending chemotherapy, where

(a) Dr. Soojian did not testify about the burn wound and that decedent's oncologists disqualified him from receiving chemotherapy until it healed, but it never did;

(b) it was Dr. Cowan who testified the decedent was badly burned through the Hospital's negligence and his oncologists disqualified him from receiving chemotherapy until the wound healed, but it never did; and

(c) the Hospital's oncology expert witness Dr. Hall admitted decedent's oncologist delayed giving him chemotherapy because she was waiting for the burn to heal?

[2.] Was it reversible error to instruct the jury that [Appellant] was required to "prove" [Appellees'] negligence disqualified [the decedent] from chemotherapy, rather than allowing recovery under the "increased risk of harm" standard?

- 3 -

Appellant's Brief at 4-5.

## Issue Preservation

At the outset, we conclude that Appellant preserved these issues for our review. **See Jones v. Ott**, 191 A.3d 782 (Pa. 2018) (plurality); **Brancato v. Kroger Co.**, 458 A.2d 1377 (Pa. Super. 1983); Pa.R.C.P. 227.1(b).[1]  In **Jones**, which was a plurality decision, our Supreme Court discussed the preservation of challenges to a jury charge.  The **Jones** Court cited **Brancato** and reiterated that in order to preserve such a challenge, the appellant must have filed points for charge, or alternatively, made a timely specific objection at the time of the charge.  **Jones**, 191 A.3d at 785.  The **Jones** Court then relayed that the appellant must also preserve the challenge in a post-trial motion pursuant to Pa.R.C.P. 227.1(b).  **Jones**, 191 A.3d at 785-86.  However, the **Jones** Court then expanded on these requirements and opined that in order to preserve a jury-charge challenge for appellate review, the appellant must either raise a contemporaneous objection on the record or make requested points for charge part of the record, obtain the trial court's ruling on the challenged instruction, and raise the issue in a post-trial motion. **Id.** at 789 (citing Pa.R.A.P. 302(a); Pa.R.C.P. 226(a), 227, and 227.1; **Dilliplaine v. Lehigh Valley Tr. Co.**, 322 A.2d 114, 116-17 (Pa. 1974)).

---

[1] Appellee contends that Appellant waived his issues on appeal pursuant to our Supreme Court's decision in **Jones**.  Appellee's Brief at 16.  For the reasons set forth below, we disagree, and we decline to find waiver.

We note that this waiver analysis in the lead opinion in **Jones** (denoted as section II(a) of the lead opinion), was joined by only two justices; a third justice concurred with an alternative discussion of waiver (section II(b) of the lead opinion), which allowed for affirmance. Therefore, the **Jones** Court's conclusion that a jury-charge challenge is waived if, in addition to filing points for charge and raising the issue in a post-trial motion, the appellant does not obtain the trial court's ruling on the challenged instruction, did not garner a majority and therefore is not binding. **See Lomas v. Kravitz**, 130 A.3d 107, 123 n.11 (Pa. Super. 2015) (*en banc*) (stating that a plurality opinion is binding on the parties in that particular case, but the legal conclusions and/or reasoning employed by a plurality does not constitute binding authority).

Instantly, the record reveals that, prior to trial, Appellant filed proposed points for charge with the trial court. Points for Charge, 2/7/19. Although Appellant did not present a specific challenge to the trial court's instruction relative to the increased risk of harm, Appellant did raise the issue concerning the trial court's reference to Dr. Soojian on the record when the trial court provided its jury instruction, and the trial court declined to recharge the jury. N.T., 2/19/19, at 128-30, 138-39. Appellant also presented these issues in its post-trial motion and Pa.R.A.P. 1925(b) statement. Post-Trial Mot., 3/1/19, at ¶¶ 8-11; Rule 1925(b) Statement, 11/7/19. Because Appellant did file proposed points for charge and a post-trial motion, we conclude that we

may review the issues as stated in Appellant's Statement of the Questions Involved.[2]  Appellant's Brief at 4-5.

**Jury Charge Regarding Drs. Soojian, Cowan, and Hall**

Appellant first argues that the trial court's jury instruction improperly informed the jury that it should consider the testimony of Appellant's oncology expert, Dr. Michael Soojian, to the preclusion or exclusion of the other experts' testimony.  **See** Appellant's Brief at 25.  Appellant argues that the jury instruction was erroneous because it caused the jury to focus its consideration on Dr. Soojian's testimony and disregard the testimony from Appellant's expert witness Dr. Mark Cowan and Appellee's expert witness Dr. Michael Hall, both of whom testified that the burn caused by the MRI disqualified the decedent from chemotherapy.  **See id.** at 30-35.  Appellant asserts that this is significant because the decedent had a life expectancy of eleven months if he underwent chemotherapy, but his life expectancy was five to six months without chemotherapy.  **See id.** at 65.  Appellant concludes that the erroneous jury charge misled the jury and caused it to award only $70,000.00 on the survival claim and $0.00 on the wrongful death claim.  **See id.** at 61. Appellant also argued that the trial court charged the jury that damages recoverable under the Survival Act were limited to the mental and physical pain suffered resulting from the MRI burn itself and did not allow the jury to award any

---

[2] As discussed in greater detail below, Appellant, however, failed to preserve sub-issues enumerated in the argument portion of its brief.

damages for the anguish the decedent suffered from the denial of life-extending chemotherapy. *See id.* at 67. Therefore, according to Appellant, the jury improperly awarded zero damages for pain and suffering from the denial of chemotherapy. *See id.*

Appellee contests Appellant's assertion and contends that the trial court committed no abuse of discretion in its charge to the jury. Appellee's Brief at 5. Appellee argues that Appellant's claim is meritless because the trial court "never instructed the jury, expressly or otherwise, to disregard any testimony, much less the testimony of Dr. Cowan or Dr. Hall." *Id.* at 7.

Our review of the trial court's denial of a motion for a new trial is well settled: "Trial courts have broad discretion to grant or deny a new trial and, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." *Banohashim v. R.S. Enters., LLC*, 77 A.3d 14, 22 (Pa. Super. 2013) (citation omitted and some formatting altered). Additionally, our review of jury instructions is governed by the following principles:

> Our standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case. It is only when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse, rather than clarify a material issue, that error in a charge will be found to be a sufficient basis for the award of a new trial. [A] charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. [Furthermore,] in reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear

- 7 -

erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc.*, 150 A.3d 957, 962-63 (Pa. Super. 2016) (citations omitted and some formatting altered). Finally, we will not award a new trial for isolated inaccuracies in the jury instructions. *Butler v. Kiwi, S.A.*, 604 A.2d 270, 272-73 (Pa. Super. 1992) (citation omitted).

In its charge to the jury, the trial court began by informing the jurors that they must consider the instruction as a whole. N.T. Trial, 2/19/19, at 100. The trial court then instructed the jury, in relevant part, as follows:

Now in the case, [Appellant] has the burden of proving the following, and the first is Question 1: One or more of the agents of Jefferson was negligent. And I'm referring to Peter Natale, Nurse Abraczinskas and/or Carol Bangle, that's Question 1, and I'm going to explain the definitions a little more. [Appellant] has the burden of proving, too, that the at-issue negligence was a factual cause in bringing about the claimed harm. Here I'm referring to the burn at issue that you heard about at this trial in the MRI, that's Question 2. And 3, the extent of damages caused by the at-issue negligence, that's Question 3. Plaintiff is also claiming that because of his burn, [the decedent] did not undergo chemotherapy. And if [the decedent] had undergone chemotherapy, he may have lived 11 months from his diagnosis rather than the predicted six months from diagnosis without chemotherapy. [Appellant] relied on the testimony of Dr. Soojian, you remember, he was the person on the video, to support their claims. [Appellee] denies Dr. Soojian's testimony supports [Appellant]'s claim. Whether plaintiff has proven [its] claim is for you to determine.

Now, I'm going to give you a little further explanation on Question 1. And Question 1 says do you find any agent or employee of [Appellee] Thomas Jefferson University Hospital, Peter Natale or

- 8 -

Nurse Abraczinskas or Carol Bangle, R.T. were negligent. Do you remember when I read this for you at the beginning of trial when it has to do with agent. In this case it is admitted that Peter Natale, Nurse Abraczinskas and Carol Bangle were acting as the agents of Jefferson Hospital. Under the law that's what we call vicarious liability, a principal is liable for the negligence of its agent. Therefore, if you find any of these agents of Jefferson to be negligent, then you must find Jefferson also negligent. If, however, you find that these agents not negligent, then you must find Jefferson not negligent also. So what you're looking at is the conduct of the named agent.

Remember, that I told you that the negligence at issue of the agents is what we call professional negligence. I read that for you at the beginning of trial. I'm going to read it for you again, and that's what we're talking about. So you see Question 1, do you find any agent, I've explained that to you and then I listed them for you, were negligent. When we say negligent, I'm talking about professional negligence and that standard of care. And I'll read it for you again: Professional negligence consists of a negligent, careless or unskilled performance by a health care provider of the duties imposed on him or her by the professional relationship to patient. It is also negligence when a health care provider shows a lack of proper care and skill in the performance of a professional act. A health care provider must have the same knowledge and skill and use the same care normally used in the medical profession. A health care provider who[se] conduct falls below the standard of care is negligent.

Now, you heard from the expert witnesses presented by the party as to [what] each party was contending the standard of care was in this case. And you have heard the opinions and other evidence as to the party's contentions as to whether any agent of Jefferson breached that standard of care. Remember, it will be for you to decide by a preponderance of the evidence whether [Appellant] has proven their claims to that regard. So that's Question 1.

Now you're going to see with Question 1 that it just gives you a yes or no. Then it will say if you answer Question 1 yes as to any of the identified agents, then you go to Question 2. If you answer no, [Appellant] can't recover and the deliberations are over. You see that word, you. You in this context on the verdict sheet means the jury. Not talking to any one particular juror, it's talking about if you reach verdict on that question.

Now, I know some of you said that you have served in a criminal trial. Remember, this is a civil trial. And in a civil trial a verdict does not need to be unanimous. There are 12 of you, so when ten of 12 agree, then you've reached your verdict. And I explain this to you right after Question 1 because it goes question-by-question. So when ten of 12 of you agreed on Question 1, you either move on to Question 2 or you have finished deliberating, whichever the case may be.

Let's now talk about Question 2. Question 2 was asking was the medical negligence a factual cause of the harm. So remember the harm we're talking about is the MRI burn. Here's what I'm going to read for you about factual cause: In order for [Appellant] to recover in this case, the at-issue negligent conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm. To be a factual cause, the at-issue negligent conduct need not be the only factual cause. The fact that some other causes concur with the at-issue negligence of [Appellee] in producing an injury does not release the defendant from liability as long as his or her own negligence is a factual cause of the injury.

When a health care provider negligently fails to act or negligently delays in taking indicated, diagnostic or therapeutic steps and this negligence is a factual cause of injury to [Appellant], that negligent health care provider is responsible for the injuries caused. Where the [Appellant] presents expert testimony that the failure to act or delay on the part of the defendant health care provider has increased the risk of harm to the plaintiff, this testimony, if found credible, provides a sufficient basis from which you may find that the negligence was a factual cause of the injury sustained. Here I'm referring to the testimony of the [Appellant]'s experts regarding [Appellee] Jefferson's conduct as to the MRI. If there has been any significant possibility for avoiding injuries with regards to the MRI and the defendant has destroyed that possibility, the defendant may be liable to the plaintiff for the MRI burn. It is rarely possible to demonstrate to an absolute certainty what would have happened under circumstances that the wrong doer was not allowed to bring about. So that is the definition of factual cause for Question 2. Now again, you will see that there

are instructions under Question 2. It says if you answer Question 2 yes, proceed to Question 3. If you answer Question 2 no, the plaintiff cannot recover and inform Phil. Now, remember when it says you, it's talking about the ten of 12 of you. It does not have to be the same ten as in Question 1. It just has to be ten.

Now we're onto Question 3 and you will see that Question 3 has to do with damages. The fact that I am about to instruct you about damages does not imply any opinion on my part as to whether damages should be awarded. If you find [Appellee] is liable to [Appellant], you must then find an amount of money damages you believe will fairly and adequately compensate the plaintiff for all the injuries sustained as a result of the MRI burn. If you find [Appellee] liable, the amount you award today must compensate [Appellant] completely for damages sustained. If your verdict is in favor of [Appellant] -- I might be reading the same thing over again, but if -- if things sound duplicative because in my reading of something or writing of it, I doubled something, just disregard that I may have already said it. It's not to emphasize anything. It's just to get me from point one to point two. Sometimes it's said a little bit differently and if it sounds duplicative, my apologies. There's no intent there, it's just the way that I have it written.

So if your verdict is in favor of [Appellant], you must then find the amount of money damages you believe fairly and adequately compensates [Appellant] for all the physical injuries he sustained as a result of the negligence you have found. The amount you award today must completely compensate [Appellant] for all damages sustained. Any damages that you award are to compensate [Appellant], not to punish anyone.

Now, you have heard and I think the parties mentioned this that there is a statute called wrongful -- a death statute and survival statute and that's the statute that applies when the person is no longer living. So let me read for you the instruction as it applies to Question 3: And there's a little bit of disjointedness that's why again, I say if I duplicate something, it's just because I heard the sirens out there and I might have left off and I read something over again, that's also why it might be duplicative, so please my apologies. It just appears that that siren out there, when I start reading, it starts going. When I stop, it stops. So I'm going to try again. When a person dies, the damages they would have been entitled to go to their estate or survivors. The estate and survivors are just as entitled to these damages as the deceased

- 11 -

person would have been had he survived. [Mary Hayes], as the administratrix of the decedent's estate, claims damages under what we have called Wrongful Death and Survival Act. She is entitled to make a claim under both acts. But the damages must not be duplicative. So you'll see there are two lines. I'm going to explain each of them to you. If your verdict is in favor of [Appellant], you must then find the amount of money damages that you believe fairly and adequately compensate [Mary Hayes] as the administratrix of the decedent's estate for all the physical injuries sustained as a result of the negligence you found. Remember, your award of damages is to compensate [Appellant], not to punish the defendant. The amount you award today must completely compensate [Appellant] on behalf of decedent's estate for all damages sustained. The verdict sheet you will receive when you begin your deliberat[ions] contains a series of questions that leads you to your verdict. And I've already explained to you Question 1 and Question 2 and I've explained to you that those are those two slots for you to record your verdict as each item of damages that I'm now describing to you.

Let me talk to you first -- and I think that's the first line where it says damages under Pennsylvania Wrongful Death. Now, the plaintiff is entitled to be awarded a sum that will fairly and adequately compensate [the decedent's] family for the -- if you find it to be proven the full 11 months claimed by [Appellant]. So I think remember -- I didn't say that quite right. Remember, when I told you that [Appellant] was also claiming that because of the burn that, and I'm just going to read it for you again here, again, not to duplicate or to make it more important but just to explain it again in the context of the damages that I'm explaining to you. Just give me a moment to flip back to where I was talking about. Remember when I told you [Appellant] was also claiming that because of [the decedent's] burn, he did not undergo chemotherapy. If he had undergone chemotherapy, he may have lived 11 months from his diagnosis, rather than the predicted six months from the diagnosis without chemotherapy. Remember that [Appellant is] relying on the testimony of Dr. Soojian to support their claims. Remember, [Appellee] is denying Dr. Soojian's testimony supports [Appellant]'s claim and whether plaintiff has proven this claim. Again, this is the claim that I'm now explaining damages for. Whether claimant has proven this claim is for you to determine, and remember it's the preponderance of the evidence. So if you get there, the [Appellant] is entitled to be awarded a sum that will fairly and

adequately compensate [the decedent's] family for the monetary value of the services, society and comfort that he would have given to his family had he lived the full 11 months claimed by plaintiff including such elements as work around the home, provision of physical comfort and services and provisions of society and comfort. [Appellant] on behalf of the surviving children is entitled to be awarded an amount that will fairly compensate for the loss of services that the decedent as a father would have contributed to his children for this 11 months. Remember, I'm talking about is[3] proven. It will be your duty to consider the monetary value of such services as guidance, tutelage and moral up bringing that you believe the children would have received up to the time you believe such services would have been provided had the death not occurred at the time it did. So you may also include another amount up to that 11 months, if you don't accept the 11 months. Or you can conclude that [Appellant] hasn't proven that at all. So it's just up to you. And I'm just explaining the law to you. Please, understand when I'm giving you those corollaries, I'm not making any commentary or opinion as to what you should find or how you should find it. I'm just making an explanation of the law. So that's the Wrongful Death.

Under the Survival Act, the damages recoverable by [Appellant] are as follow: the plaintiff is entitled to be awarded an amount that you believe will fairly and adequately compensate for the mental and physical pain suffered, inconvenience and loss of life's pleasures that the decedent . . . endured from the moment of his burn in the MRI to the moment of his death as a result of the MRI burn. There are four items that make up a damage award for noneconomic loss under that second line. And they are, pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement. First, [Appellant] on behalf of [the decedent's] estate is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience and distress that you find [the decedent] endured from the time of the injury until the time of his death as a result of the MRI burn. Second, [Appellant] on behalf of the decedent's estate -- when I say decedent, I'm talking about [the decedent] -- is entitled to be fairly and adequately compensated for such embarrassment and humiliation that you

_____

[3] Appellee contends that this should read "if proven." Appellee's Brief at 23 n.11. We agree. However, this likely typo does not impact our analysis or conclusion in this matter.

- 13 -

believe the decedent had endured as a result of the MRI burn. Third, [Appellant] on behalf of decedent's estate is entitled to be fairly and adequately compensated for the decedent's loss of the ability to enjoy any of the pleasures of life as a result of the MRI burn from the time of that MRI burn to the time of his death. And plaintiff is also entitled on behalf of [the decedent's] estate to be fairly and adequately compensated for the disfigurement that [the decedent] suffered from the time of the MRI burn until the time of his death.

Now, you'll see the first item with the wrongful death under the statute I discussed? Remember I was talking about that's talking about the five month period anywhere up to 11 months from six months. And the survival is what I'm talking about [the decedent's] pain and suffering, embarrassment and humiliation and those other, what we call, noneconomic damages to [the decedent] himself, and that's survivor.

You are to add, once you deliberated on these two numbers, you are to add these items of damage -- actually, no, it's a lump sum for A and a lump sum for B. You know how I listed through and there were like four different ones, there's only one line.

So damages should be awarded for all injuries caused by the incident even if the injuries caused by the incident -- and when I'm saying the incident, you know I'm talking about the MRI, the MRI burn that's at issue -- were more severe than could have been foreseen because of the [the decedent]'s prior condition or pre-existing medical condition was aggravated by the incident. If you find [the decedent] did have a pre-existing condition that was aggravated by the at-issue negligence, [Appellee] is responsible for any aggravation caused by the at-issue negligence. I'll remind you that [Appellee] can be held responsible only for those injuries or the aggravation of a prior injury or condition that you find was factually caused by the incident at issue. Again, we're talking about the MRI and MRI burn.

Now, in this case, as I have explained to you, [Appellant] is bringing a claim for damages that they claim are as a result of professional negligence as I have instructed you. It is a civil action for compensatory damages. Thus, your only consideration is whether, based on the believable evidence, [Appellant] ha[s] proven their claim as I instructed you. Your verdict does not involve punishment of the defendant. You should not concern yourselves with any other matter such as social or political issues

relating to medicine. No thought should be given to these irrelevant considerations in reaching your verdict.

So those are my instructions for you that are going through the specifics of the verdict sheet. Question 1 relates to the negligence of the agents that are listed there. Question 2 is the causation and Question 3 has to do with the damages. And then they're divided between what's claimed for wrongful death and what's claimed for survivor.

N.T. Trial, 2/19/19, at 106-24.

As the trial court indicated, during deliberations, the jury posed questions concerning Appellant's tax information and an explanation of the Wrongful Death and Survival Act. *See* Trial Ct. Op. at 2 (citing juror question form from 2/19/19, at 2:55 p.m.). The trial court reconvened the jury and answered the questions as follows:

Hello, my jury. I received the following two questions together and because I don't want to -- sometimes the [c]ourt is not always a hundred percent sure of what you're asking and it could be that my answer gives you way more information than what you're asking for. But when you ask me a very broad question, I don't have any other way to answer it except give you more information, then ask you guys did that answer your question. Then you tell Phil if it didn't, then you have to ask a more specific question.

The Question 1 and 2, I'm making the assumption that the first one on the first line is a question, and then the second one is a question. But I'm not a hundred percent sure, that's why I'm kind of letting you know. The first line says can we see the W-2 info. And the second one says explanation of the Wrongful Death Act and Survival Act. I'm going to answer the second one first and go in reverse order. Again, I may be giving you way more information than what you asked for, but I don't know how to interpret.

Plaintiffs are making a claim for wrongful death because they are claiming that [Appellee] Jefferson's negligence was the factual cause in [the decedent] not undergoing chemotherapy. And that

- 15 -

had he undergone chemotherapy, he may have lived up to 11 months from diagnosis of his pancreatic cancer. If [Appellant has] proven this claim by the preponderance of the evidence, then you may consider the claim for wrongful death and the resulting damages if proven. If this claim is not proven, then you may not consider the damages claim for wrongful death. Under the Wrongful Death Act, the damages recoverable by [Appellant] are as follows: Past and future noneconomic damages. [Appellant] is entitled to be awarded a sum that will fairly and adequately compensate his family for the monetary value of the services, society and comfort that he would have given to his family had he lived the full 11 months claimed by [Appellant] or some point in between as you may find, including such elements as work around the home, provision of physical comforts and services and provisions of society and comfort. [Appellant], on behalf of the surviving children, is entitled to be awarded an amount that will fairly compensate for the loss of services that [the decedent], as a father, would have contributed to his children for this 11 months or a period in between or up to that. It will be your duty to consider the monetary value of such services as guidance, tutelage and moral up bringing that you believe the children would have received up until the time you believe that such services would have been provided had the death not occurred at the time it did. That's the wrongful death.

With regard to the claim of damages that are not based on the wrongful death claim, [Appellant] must prove that the at-issue negligence was a factual cause in bringing about the burn in the MRI and the extent of damages caused by the MRI burn to [the decedent]. Under the Survival Act the damages recoverable by [Appellant] are as follow: Noneconomic damages. The plaintiff is entitled to be awarded an amount that you believe will fairly and adequately compensate for the mental, physical pain, suffering and inconvenience and loss of life's pleasures that the decedent . . . endured from the moment of his burn in the MRI until the moment of his death as a result of the MRI burn. There are four items of damages that make up the damage award for noneconomic loss in this category. Pain and suffering, embarrassment and humiliation, loss of the ability to enjoy the pleasures of life and disfigurement.

First, [Appellant] on behalf of [the decedent's] estate is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience and distress that you

- 16 -

find [the decedent] endured from the time of the injury until the time of his death as a result of the MRI burn.

Second, [Appellant], on behalf of the decedent's estate, again, we're talking about [the decedent], is entitled to be fairly and adequately compensated for such embarrassment and humiliation that you believe [the decedent] had endured as a result of the MRI burn.

Third, [Appellant] on behalf of the decedent's estate, again we're talking about [the decedent], is entitled to be fairly and adequately compensated for [the decedent's] loss of the ability to enjoy any of the pleasures of life as a result of the MRI burn from the time of the MRI burn until the time of his death.

Finally, on behalf of [the decedent's] estate, it is entitled to be fairly and adequately compensated for the disfigurement that [the decedent] suffered from the time of the MRI burn until the time of his death. So that is my answer for your second question.

The first question can we see the W-2 information, I did not allow that exhibit into evidence. It was not evidence in that I told you at the time. Remember when I told you that there's nothing within the contents of it that was being admitted for any purpose for evidence. The evidence was whatever the witness had said, and that was the evidence. Also make sure that you remember that in those two items of damages that I read for you, whether it's the Wrongful Death Act, the Survival Act or both, the only claim of damages is for noneconomic damages.

N.T. Trial, 2/19/19, at 140-45.

After review, the record established that the trial court never instructed the jury to disregard the testimony of either Dr. Cowan or Dr. Hall. Appellant's conclusions are unsupported by the record and fail to demonstrate any error or abuse of discretion by the trial court. Although the trial court mentioned Dr. Soojian, it was not to the exclusion of Dr. Cowan, Dr. Hall, or any other witness. Additionally, the trial court did not instruct the jury to rely solely on Dr. Soojian's testimony. Instead, the jury instruction reveals that the trial

court referenced Dr. Soojian only in connection with the impact of chemotherapy on the decedent's life expectancy.[4]  Accordingly, Appellant's argument is not supported by the record, and we find the claim meritless.

Included in Appellant's argument relative to its first issue is an assertion that the trial court, in its jury charge, failed to refer specifically to Dr. Cowan

_____

[4] In its opinion, the trial court stated that according to its "recollection," Dr. Soojian testified that the MRI burn prevented the decedent from receiving chemotherapy, and if the decedent received chemotherapy, he may have lived eleven months from his diagnosis as opposed to six months without chemotherapy.  Trial Ct. Op. at 9 n.26.  The trial court then explained that it was precluded from reviewing this recollection because Appellant failed to make Dr. Soojian's deposition testimony part of the record in violation of Philadelphia County Rule of Judicial Administration 1900.  *Id.*  On January 9, 2020, Appellant filed a motion to correct the record and requested the notes of testimony from Dr. Soojian's deposition be included in the trial court record.  On January 27, 2020, this Court denied Appellant's motion without prejudice to Appellant's ability to pursue this relief in the trial court.  On January 30, 2020, Appellant filed a motion in the trial court asking to have these notes of testimony transcribed and forwarded to our Court.  It does not appear that any further action was taken.  However, Appellant included a copy of these notes of testimony in the reproduced record, and Appellee has not challenged the accuracy of the copy.  Indeed, Appellee cites the notes of testimony from Dr. Soojian's deposition present in the reproduced record.  Appellee's Brief at 18 n.9.  Ultimately, it appears that the trial court's recollection was partially incorrect.  Dr. Soojian did not specifically mention the MRI burn; however, Dr. Soojian did testify to a reasonable degree of medical certainty that the survival period for a person in the decedent's medical condition was six months without chemotherapy and as much as eleven months with chemotherapy.  R.R. at 79a (N.T. Dr. Soojian Dep., 2/19/19, at 23-24).  Dr. Soojian then explained that chemotherapy is deferred for patients with a surgical wound because the healing of a wound can be inhibited by chemotherapy.  *Id.* at 80a (N.T. Dr. Soojian Dep. at 25-26).  Although the trial court's recollection was not exact, the trial court's opinion does not alter the jury instruction, and Appellant remains incorrect in its assertion that the trial court referenced Dr. Soojian with respect to the MRI burn.  The trial court's recollection at the time it drafted the trial court opinion is immaterial to the adequacy of the instruction at trial as the jury instruction speaks for itself.

relative to the applicable standard of care. Appellant's Brief at 37. However, Appellant cites no authority for the proposition that the trial court was required to mention or even acknowledge any witness or that the failure to do so was error. Therefore, this issue is waived. **See Piston v. Hughes**, 62 A.3d 440, 444 (Pa. Super. 2013) (deeming a claim that is undeveloped and unsupported by relevant authority to be waived).

Moreover, as the trial court noted, during trial, it repeatedly sustained Appellee's objections to Dr. Cowan testifying regarding the standard of care relative to receiving chemotherapy. Trial Ct. Op. at 5 n.13. The trial court explained as follows:

> Dr. Mark Cowan was qualified as an expert in pulmonology, critical care, and in the handling of patients who require MRI transport. Dr. Cowan's testimony provided the standard of care for [Appellee] TJUH and its agents in planning and administering an MRI procedure. Dr. Cowan concluded, to a reasonable degree of medical certainty, that TJUH and/or its agents had deviated from such standard, which resulted in the burn to [the decedent's] arm during his MRI procedure. Dr. Cowan **was not qualified to give any expert opinion** as to whether the burn sustained by [the decedent] prevented him from receiving chemotherapy, as such testimony was beyond the scope of his expertise; however, this Court did permit Plaintiff to elicit **testimony from a wound care perspective** from Dr. Cowan regarding the impact of the burn on [the decedent], based upon Dr. Cowan's expertise as a physician providing wound care to patients. Despite this Court's rulings, Plaintiff repeatedly attempted to go beyond the scope of Dr. Cowan's expertise to elicit **impermissible expert testimony** as to the feasibility of chemotherapy for [the decedent]. As such, this [c]ourt had to either sustain an objection or clarify the testimony being provided on ten separate occasions. **See** N.T. 2/19/2019 at 69:19-25, 70:7-13, 72:14-18, 80:7-25, 81:1-3, 94:13-22, 97:13-23, 98:19-25, 99:1-2, 101:18-25, 102:1-4, 107:2-19, 108:14-20.

- 19 -

Trial Ct. Op. at 5 n.13 (emphases in original).

The trial court did not permit Dr. Cowan to testify regarding the standard of care relative to oncology or chemotherapy as it was beyond the scope of his expertise. Importantly, Appellant did not raise the trial court's rulings concerning Dr. Cowan's qualifications in its Pa.R.A.P. 1925(b) statement. Therefore, Appellant has not preserved any challenge in this regard. Although Appellant's Rule 1925(b) statement mentions that Dr. Cowan testified regarding the standard of care, it ignores the facts that the trial court repeatedly precluded this testimony as it related to chemotherapy. Appellant's Rule 1925(b) statement did not challenge the trial court's ruling that precluded Dr. Cowan's testimony. Accordingly, Appellant's argument that Dr. Cowan should have been qualified to testify to this standard of care[5] is waived, and we will not address it. *See U.S. Bank, N.A. for Certificateholders of LXS 2007-7N Tr. Fund v. Hua*, 193 A.3d 994, 997 (Pa. Super. 2018) (holding that issues not raised in a Rule 1925(b) statement are deemed waived on appeal); *see also* Pa.R.A.P. 1925(b)(4)(vii).[6]

_____

[5] Appellant's Brief at 55-61.

[6] We are cognizant that Appellant points to an exchange where Dr. Cowan testified that the decedent was not a candidate for chemotherapy because of the burn from the MRI. Appellant's Brief at 51 (citing R.R. at 115; N.T., 2/12/19, 85-86). Appellant points out that despite Appellee's numerous sustained objections on this point, in this instance, Appellee did not object to Dr. Cowan testifying regarding the impact that the MRI burn had on [the decedent] being a candidate for chemotherapy. However, although there was no objection to this testimony, Appellant provides no support for its argument
*(Footnote Continued Next Page)*

In sum, Appellant asserts that the trial court's mentioning of Dr. Soojian effectively instructed the jury to disregard the testimony of other expert witnesses, specifically Dr. Cowan and Dr. Hall. After review, we cannot agree with Appellant's claim or conclude that the jury instruction was incorrect or misleading. Reading the instruction as a whole, the trial court's reference to one expert was in no way to the preclusion of others. After review of the jury instruction, we conclude that Appellant's claim is meritless, and we find no prejudice.[7] *See Salsgiver Commc'ns, Inc.*, 150 A.3d at 963. Appellant is due no relief on his first issue.

**Jury Charge Regarding Burden of Proof**

Appellant next asserts that the trial court erred in its instruction on increased risk of harm. Appellant contends that the trial court instructed the jury that Appellant had the burden to prove that Appellee's negligence disqualified the decedent from chemotherapy, and the trial court's use of the word "proven" deprived the jury of the opportunity to find an increased risk of harm. Appellant's Brief at 68-71.

Appellee counters that the jury was not "deprived," and there was no error in the trial court's instruction. Appellee's Brief at 22. Additionally,

---

that the trial court committed an error when it did not specifically instruct the jury to consider Dr. Cowan's testimony concerning chemotherapy. Appellant's unsupported claim is waived. *See Piston*, 62 A.3d at 444.

[7] Appellant does not argue that the trial court erred in instructing the jury regarding the applicable law relative to negligence and medical malpractice in wrongful death and survival actions.

Appellee noted that the "increased risk" determination may only make out a *prima facie* case of liability, and Appellant was required to demonstrate that the alleged negligence was the factual cause of damages. *Id.* at 22-23.

The trial court addressed Appellant's issue as follows:

> In fashioning its instructions on causation, this Court was mindful of the permissible scope of Dr. Cowan's testimony. As such, this Court properly charged the jury on direct causation and increased risk of harm in accordance with the Section 323(a) of the Restatement (Second) of Torts (1965) and the longstanding precedent of this Commonwealth, as set forth by our Supreme Court in **Hamil v. Bashline**[, 392 A.2d 1280 (Pa. 1978),] and **Jones v. Montefiore Hospital**[, 431 A.2d 920 (Pa. 1981)]. Section 323(a) provides that
>
>> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. [Restatement (Second) of Torts § 323(a) (1965).]
>
> The **Hamil** Court held that the effect of Section 323(a) "was to relax the degree of certainty ordinarily required of a plaintiffs evidence to provide a basis upon which a jury may find causation." [**Jones**, 431 A.2d at 923 (summarizing **Hamil**)] As such, the Court concluded that:
>
>> [o]nce a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm. [**Hamil**, 392 A.2d at 1286.]
>
> Our Superior Court has further determined that "direct causation and increased risk of harm are not mutually exclusive, but simply alternative theories of recovery which, depending on the facts and

- 22 -

the expert testimony, may both apply in a given case." [***Klein v. Aronchick***, 85 A.3d 487, 494 (Pa. Super. 2014).]

[Appellant] takes issue with the following portion of this Court's instruction regarding Question 2 on the verdict slip:

Question 2 was asking was the medical negligence a factual cause of the harm. So remember the harm we're talking about is the MRI burn. Here's what I'm going to read for you about factual cause: In order for [Appellant] to recover in this case, the at-issue negligent conduct must have been a factual cause in bringing about harm. Conduct is a factual cause of harm when the harm would not have occurred absent the conduct. To be a factual cause, the conduct must have been an actual real factor in causing the harm even if the result is unusual or unexpected. A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm. To be a factual cause, the at-issue negligent conduct need not be the only factual cause. The fact that some other causes concur with the at-issue negligence of [Appellee] in producing an injury does not release the defendant from liability as long as his or her own negligence is a factual cause of the injury. When a health care provider negligently fails to act or negligently delays in taking indicated, diagnostic or therapeutic steps and this negligence is a factual cause of injury to [Appellant], that negligent health care provider is responsible for the injuries caused. Where the [Appellant] presents expert testimony that the failure to act or delay on the part of [Appellee] has increased the risk of harm to the plaintiff, this testimony, if found credible, provides a sufficient basis from which you may find that the negligence was a factual cause of the injury sustained. Here I'm referring to the testimony of [Appellant's] experts regarding [Appellee] Jefferson's conduct as to the MRI. If there has been any significant possibility for avoiding injuries with regards to the MRI and [Appellee] has destroyed that possibility, [Appellee] may be liable to the plaintiff for the MRI burn. It is rarely possible to demonstrate to an absolute certainty what would have happened under circumstances that the wrong doer was not allowed to bring about. [N.T., 2/19/19, at 111-13.]

This instruction properly conveyed to the jury that the factual cause at issue was related to the burn suffered by [the decedent]

in the course of undergoing the MRI procedure. Had the jury determined that TJUH's conduct was not the factual cause of such burn, [Appellant] would not have been entitled to recover for the claims that [the decedent] could not receive chemotherapy. Accordingly, [Appellant's] claims of error lack merit.

Trial Ct. Op. at 5-7 (footnotes omitted and formatting altered).

Notably, Appellant does not challenge the trial court's instructions on the burden of proof with respect to wrongful death and survival actions that included instruction on increased risk of harm. Appellant's Brief at 68 (citing N.T. Trial, 2/19/19, at 112-13). Appellant asserts only that the trial court's subsequent use of the word "proven" altered the burden of proof. *Id.* at 69. Appellant contends that the trial court instructed the jury that Appellant had the burden to prove that Appellee's negligence disqualified the decedent from chemotherapy. *Id.* at 68-71.

Here, the record does not support Appellant's claim that the trial court instructed the jury in this manner, and we find that Appellant's argument takes a portion of the instruction out of context. Although the trial court later used the words "prove" and "proven," we cannot conclude that it nullified the lengthy and accurate instruction on damages or mislead the jury.[8] *See* N.T. Trial, 2/19/19, at 113-24. In Appellant's proposed points for charge, it

---

[8] To the extent that Appellant relies on *Jones* to support its claim, we note that *Jones* is readily distinguishable. In *Jones*, the trial court refused to provide an instruction regarding increased risk of harm. *Jones*, 431 A.2d at 923. Here, the trial court did not refuse to give the instruction. *See* N.T. Trial, 2/19/19, at 112-13.

requested the use of standard civil jury instructions,[9] and the record reflects that the trial court's charge paralleled the language from the standard instructions with respect to negligence, wrongful death and survival, and damages. N.T., 2/19/19, at 111-16. The trial court aptly defined the standards and burdens.[10] *Id.*

For the reasons set forth above, we conclude that Appellant's claims of error are meritless. Therefore, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/21

---

[9] Appellant's Proposed Points for Charge, 2/20/19, at ¶¶ 4-41.

[10] The trial court acknowledged that the jury charge could be construed in some instances as duplicative and disjointed. N.T., 2/19/19, at 115. However, isolated inaccuracies do not warrant a new trial. *Butler*, 604 A.2d at 273. When the charge is considered as a whole, it tracked the standard civil jury instructions and was compliant with the applicable law.